UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Alexander Dockery,

                Petitioner,

     –v–

William Lee,

                Respondent.

15-cv-7866 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Magistrate Judge Fox recommends that this Court deny Petitioner Alexander Dockery's Petition for Writ of Habeas Corpus. For the reasons discussed below, the Court adopts Magistrate Judge Fox's recommendation and denies Dockery's petition.

    **I.    Background**

    In 1986, Alexander Dockery was convicted by a jury for first-degree robbery and second-degree robbery and then sentenced to two to six years' imprisonment. Report and Recommendation ("Report") at 3, Dkt. No. 27. He was sixteen years old at the time. *Id.* After he was sentenced, Dockery's appointed trial counsel provided him a written notice that explained how he could apply for counsel on appeal. *Id.* Trial counsel filed a notice of appeal but took no further action regarding the appeal. *Id.* After Dockery served the sentence for his 1986 sentence, he was convicted again in 1992, this time pleading guilty to third-degree attempted criminal possession of a weapon. *Id.* The sentencing court in 1992 took account of the 1986 conviction and sentenced Dockery as a "second violent felony offender." Gov't Appendix at 11, 14–15, Dkt. No. 16-1. Dockery waived his right to appeal his 1992 conviction and sentence. *Id.* at 15.

Next, in 2000, Dockery was convicted of second-degree burglary and second-degree criminal trespass under the name John Harris.  Report at 3.  Because the 1986 and 1992 convictions qualified Dockery as a persistent felony offender, he was sentenced to twenty-five years to life.  *Id.*  Dockery, with the assistance of appellate counsel, appealed his 2000 conviction in 2001.  As he later recounted in a 2012 affidavit, it was in preparing his 2001 appeal that he "learned about the forms that needed to be filed with the court for an appeal to be taken" and, he affirmed, he "began to wonder whether [his] first case really had been appealed."  Dockery Appendix, Ex. F at A170, Dkt. No. 4.[1]

Then in 2008, while serving the sentence for his 2000 conviction, Dockery wrote to the state appellate court to request a copy of the notice of appeal for his 1986 conviction and the outcome of the appeal.  Report at 3.  That inquiry led the State to file a motion to dismiss his appeal for failure to prosecute, which was granted.  *People v. Perez*, 12 N.E.3d 416, 419 (N.Y. 2014).  After acquiring counsel in 2011, Dockery reinstated his appeal and pursued it to the New York Court of Appeals.  *Id.*  That court affirmed the dismissal of Dockery's appeal in 2014 alongside the appeals of several similarly situated defendants.  *Id.* at 421.

On October 5, 2015, Dockery, with counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Habeas Petition ("Petition"), Dkt. No. 1.  He argues that the New York Appellate Division, First Department's policy of requiring that indigent defendants apply for appellate counsel and prove their indigence violated his right to appointed appellate counsel guaranteed by the Fourteenth Amendment.  *See Douglas v. California*, 372 U.S. 353, 357–58 (1963).  Magistrate Judge Fox issued a Report and Recommendation dated September 8, 2017,

---

[1] In the record submitted to the Court, Dockery's affidavit is dated January 25, 2015, and notarized September 28, 2015.  Dockery Appendix, Ex. F at A172.  But the affidavit is attached as an exhibit to a brief submitted to the New York Appellate Division on February 2, 20212.  *Id.* at A147.  The Court therefore presumes the affidavit was prepared and sworn to by Dockery sometime in 2012.

2

that recommended this Court dismiss Dockery's petition for lack of subject matter jurisdiction. Report at 17. Dockery filed a timely objection. Objection, Dkt. No. 30.

Dockery also filed a letter noting new authority on November 9, 2017. Dkt. No. 31 (citing *Calaff v. Capra*, 714 F. App'x 47 (2d Cir. 2017)). The Court ordered the parties to file supplemental briefing, which both parties timely did. Dkt. Nos. 32, 36, 39. The parties also filed a joint letter in which they agreed that this Court may rely on the new supplemental authority to "resolve the petition on grounds independent of Judge Fox's report." Dkt. No. 35.

The Court heard oral argument on Dockery's petition on August 16, 2021. Dkt. No. 42.

**II.  Analysis**

Magistrate Judge Fox recommended that this Court deny Dockery's petition. Because Dockery objected, the Court reviews de novo those parts of Magistrate Judge Fox's report to which Dockery objects. *See* Fed. R. Civ. P. 72(b)(3).

To file a habeas petition, a petitioner must be "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Custody is a prerequisite to the Court's jurisdiction. *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Generally, a petitioner is no longer in custody for a conviction—and so cannot challenge its validity—if he has finished serving the sentence for that conviction. *Id.* at 490–91.

Dockery's habeas petition listed the "[d]ate of the judgment of conviction" as February 6, 1986. Petition at 1. The petition mentioned his 2000 conviction only on the third-to-last page as a "future sentence to serve after [he] complete[s] the sentence for the judgment that [he is] challenging." *Id.* at 13. Magistrate Judge Fox therefore concluded that Dockery's habeas petition challenged only his 1986 conviction, the sentence for which Dockery is no longer in custody. Report at 14.

3

In his objection, Dockery argues that this Court should construe his petition's challenge to his 1986 conviction as attacking his 2000 conviction, for which he is plainly in custody, because the earlier conviction enhanced the later sentence. Objection at 18. This Court will, for present purposes, construe Dockery's petition as attacking his 2000 conviction, the sentence of which was enhanced by his 1986 conviction. *See Calaff v. Capra*, 714 F. App'x 47, 49 n.1 (2d Cir. 2017) (construing "liberally" a nearly identical petition prepared by counsel as challenging the later enhanced sentence).

But even if this Court construes the petition as properly attacking Dockery's enhanced 2000 conviction, he confronts a more fundamental obstacle to satisfying the custody requirement. Generally, a petitioner cannot challenge the validity of a prior conviction even if that prior conviction enhanced a sentence that the petitioner is currently serving. *Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 402–04 (2001). Rather, defendants should challenge a conviction by direct appeal and not wait until that conviction is used to enhance a later sentence. *Id.* at 402–03.

In *Lackawanna*, the Supreme Court identified two exceptions to the general rule. First, if a defendant's prior conviction was obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963). *Lackawanna*, 532 U.S. at 404. And second, if a defendant for some reason "can[not] be faulted for failing to obtain timely review of a constitutional claim." *Id.* at 405; *see also Daniels v. United States*, 532 U.S. 374, 383 (2001) (describing a similar exception when a § 2255 petitioner's failure to challenge a prior conviction was "no fault of his own"). For example, a state court may simply "refuse to rule on a constitutional claim that has been properly presented to it" or a defendant may receive evidence of his innocence only after "the time for direct or collateral review has expired." *Lackawanna*, 532 U.S. at 405. If neither exception applies, then

4

a petitioner cannot satisfy the custody requirement necessary to challenge a prior conviction by attacking a current enhanced sentence.

The Court finds that neither exception is satisfied. There is no suggestion that the first *Lackawanna* exception applies here because Dockery was represented by counsel at his 1986 trial. Report at 16. Dockery instead relies on the second, "no-fault" exception. Objection at 14–15. The Second Circuit has "never decided whether the second *Lackawanna* exception is good law." *Calaff*, 714 F. App'x at 50; *see also id.* at 51 n.2 (noting that courts are split on this question). Nevertheless, the Second Circuit applied the no-fault exception in *Calaff v. Capra*, an appeal of a habeas petition filed by a petitioner in circumstances virtually identical to those of Dockery. *Id.* at 48–49; *see also* Calaff Br. at 1, *Calaff v. Capra*, 215 F. Supp. 3d 245 (S.D.N.Y. 2016) (No. 15-CV-07868) (referring to the *Calaff* petition as a "companion" to Dockery's petition). In fact, the New York Court of Appeals dismissed the *Calaff* petitioner's direct appeal in the same 2014 opinion as it did Dockery's, and for the same reasons. *Perez*, 12 N.E.3d at 421.

In *Calaff*, the petitioner in 2015 filed a habeas petition to challenge a 2004 conviction that had been enhanced by an earlier 1993 conviction. 714 F. App'x at 48. Like Dockery, the *Calaff* petitioner did not receive appellate counsel for his 1993 conviction but did properly appeal his 2004 conviction. *Id.* at 48–49. He claimed to have first learned about the process for requesting appellate counsel in 2004. *Id.* at 51. But he did not appeal his 1993 conviction until 2012—a nearly eight-year delay for which he "offer[ed] no persuasive reason." *Id.* Therefore, the Second Circuit concluded, the petitioner could not invoke any no-fault exception in *Lackawanna*, even granting that the petitioner may have had a valid excuse for failing to appeal his prior conviction in 1993. *Id.* at 51 & n.3.

Though *Calaff* is a summary order by the Second Circuit and therefore not binding on this Court, it is highly relevant and persuasive authority. And its reasoning requires that this

5

Court dismiss Dockery's petition. As Dockery himself stated, he first "learned about the forms that needed to be filed with the court for an appeal to be taken" in 2001. Dockery Appendix, Ex. F at A170. And as the State argues, Dockery successfully completed those forms to be appointed counsel for the appeal of his 2000 conviction. Gov't Suppl. Br. at 5, Dkt. No. 39; *see People v. Harris*, 757 N.Y.S.2d 878, 879 (App. Div. 2003). He therefore could have challenged his 1986 conviction when he appealed his 2000 conviction, the sentence for which was enhanced by the 1986 conviction. *See Calaff*, 714 F. App'x at 51. New York's appellate courts have previously granted relief to defendants in that procedural posture. *E.g.*, *People v. Brewington*, 8 N.Y.S.3d 439, 440 (App. Div. 2015); *People v. Johnson*, 601 N.Y.S.2d 103, 105 (App. Div. 1993). Instead, seven years passed before Dockery inquired about the status of his pending 1986 appeal. While this Court does not fault Dockery for failing to perfect his appeal in 1986, like the *Calaff* petitioner, Dockery's failure to prosecute promptly his appeal after his 2000 conviction bars him from invoking *Lackawanna*'s no-fault exception. *Calaff*, 714 F. App'x at 51.

Dockery argues that this Court should treat his petition differently than the petition in *Calaff*. The Court concludes that none of the distinctions he raises alter the outcome. First, Dockery points to a statement made by the state prosecutor during the plea hearing for his 1992 conviction. Dockery Suppl. Br. at 6, Dkt. No. 36. When asked by Dockery's counsel whether there had been a jury trial in 1986, the State responded, incorrectly, "No, it would have been appealed by now . . . ." Dockery Appendix, Ex. F at A90. Dockery argues that he reasonably relied on that statement to conclude that his appeal had been perfected. Dockery Suppl. Br. at 6.

That argument, however, overreads the record. The state prosecutor was asked whether Dockery was convicted in a jury trial, not whether an appeal was taken. Moreover, Dockery knew that the state prosecutor's statement was false given that Dockery himself was present at the 1986 trial in which he was convicted by a jury. Tellingly, Dockery does not mention the

6

state prosecutor's statement in his 2012 affidavit where he explains his failure to file an earlier appeal. Dockery Appendix, Ex. F at A170. And in any event, the isolated statement made in 1992 does not explain the seven-year delay that followed the point when Dockery learned about the process for requesting appellate counsel in New York.

Rather than justify Dockery's inaction, the transcript of the 1992 plea proceeding demonstrates that Dockery had a prior counseled opportunity to challenge the validity of his 1986 conviction. That proceeding, as required by N.Y. Crim. Proc. Law § 400.15, provided Dockery the express opportunity to challenge the validity of his 1986 conviction before it could be used to enhance his sentence. He was represented by counsel at that proceeding who undertook an "investigation" of the 1986 conviction. Dockery Appendix, Ex. F at A89–A90. Nothing in the record before the Court suggests that counsel did not satisfy his constitutional obligation of zealous representation.

Nor was 1992 Dockery's last opportunity to challenge the validity of his 1986 conviction with the assistance of counsel. He was also counseled at his 2000 conviction, and that counsel would have also recognized the importance to Dockery's sentencing of challenging the validity of predicate felony convictions. To be sure, Dockery was a fugitive at the time of his 2000 conviction and sentencing and so could not have himself told counsel about his 1986 conviction. Gov't Br. at 9, Dkt. No. 16. But that fact cannot help Dockery to satisfy a no-fault exception. As with his 1992 counsel, Dockery does not argue that his counsel in 2000 was constitutionally ineffective, and nothing in the record would support such a claim. In short, Dockery had multiple procedural opportunities to challenge his 1986 conviction with the assistance of counsel well before he contacted the state appellate court in 2008. The Second Circuit's reasoning in *Calaff* is therefore on all fours with Dockery's case.

7

Second, Dockery observes that he was only sixteen years old in 1986 but that the *Calaff* petitioner was an adult at the time of his earlier conviction. Dockery Suppl. Br. at 3, 6. Yet Dockery was an adult in 2001 when he learned about the method for perfecting an appeal. Even if this Court were to excuse Dockery's failure to appeal in 1986, his youth cannot explain the seven-year delay that followed the appeal of his 2000 conviction. *Cf. Calaff*, 215 F. Supp. 3d at 256 ("While the delay between 1993 and 2004 was not Petitioner's fault, his failure to prosecute his appeal between 2004 and 2012 was a valid ground for dismissal by the New York Court of Appeals").

That does not mean that Dockery's youth in 1986 would be irrelevant if this Court were able to reach the merits of his Fourteenth Amendment claim. An indigent defendant is entitled to appointed counsel on his first appeal as of right, and it has long been settled that "the right to be furnished counsel does not depend on a request." *Swenson v. Bosler*, 386 U.S. 258, 260 (1967) (per curiam) (quotations omitted); *see also, e.g.*, *Koenig v. North Dakota*, 755 F.3d 636, 642 (8th Cir. 2014). In assessing the petition in *Calaff*, Judge Sweet persuasively concluded that the process for an indigent defendant to request appellate counsel in the New York Appellate Division, First Department is "unreasonably confusing," misleading, and inaccessible. 215 F. Supp. 3d at 252–53. What confuses the typical indigent defendant is likely to be even less well understood by a sixteen-year-old defendant tried as an adult like Dockery. *See Perez*, 12 N.E.3d at 428 (Rivera, J., dissenting) (advocating that youth be considered "in cases involving minor children and their right to appellate review"). Dockery's merits claim is therefore compelling. But that assessment of the merits does not alter the Court's subject matter jurisdiction analysis under *Lackawanna* and *Calaff*.

Last, Dockery argues that this Court may not consider the State's arguments about the second *Lackawanna* exception, as applied by *Calaff*, because the State waived the issue in earlier

8

briefing.  Dockery Suppl. Br. at 8.  But the State did timely file briefing on this question once prompted to by this Court.  Gov't Suppl. Br., Dkt. No. 39.  More importantly, the proper application of *Lackawanna* implicates this Court's subject matter jurisdiction and therefore "cannot be waived."  *Torres v. Senkowski*, 316 F.3d 147, 153 (2d Cir. 2003).

Because Dockery is not currently in custody serving the sentence he received in 1986 and because neither *Lackawanna* exception is satisfied here, the Court concludes that it lacks subject matter jurisdiction to consider Dockery's Fourteenth Amendment claim regarding his appeal of his 1986 conviction.

Even if the Court were to set aside the custody requirement, it also concludes, as did Magistrate Judge Fox, that the present habeas petition is a "second or successive" petition because Dockery previously attacked his 2000 conviction in a habeas petition denied in 2013.  Report at 13–14.  The Court must dismiss a second or successive petition unless the petition either "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court" or it raises new, previously unavailable facts that prove the petitioner's innocence of the underlying offense. 28 U.S.C. § 2244(b)(1)–(2).  Additionally, a petitioner must receive prior authorization from the court of appeals before filing a successive petition in the district court.  *Id.* § 2244(b)(3).  Because Dockery does not even purport to satisfy these statutory prerequisites, the Court lacks subject matter jurisdiction on this alternative basis.  *Torres*, 316 F.3d at 153 (holding that § 2244(b)'s authorization requirement is jurisdictional and not waivable).

Dockery responds that the second-or-successive-petition prohibition should not be understood literally but instead with reference to broader "equitable principles."  Objection at 21 (quoting *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002)).  He invokes the Second Circuit's holding that a later-filed petition is not "second or successive" when it asserts a claim that "did

9

not exist" at the time the earlier petition was filed. *James*, 308 F.3d at 168. This holding, however, does not save Dockery's petition from § 2244(b)'s prohibition. Dockery initially filed his first petition in June 2005, and he then filed an amended first petition in June 2010. Dkt. Nos. 1, 27, *Harris v. Phillips*, No. 05-CV-2870 RRM, 2013 WL 1290790 (E.D.N.Y. Mar. 28, 2013). As detailed above, Dockery by 2010 had learned about the process to perfect an appeal and written to the appellate division about his 1986 appeal, and the appellate court had dismissed that appeal the first of two times for failure to prosecute. *Perez*, 12 N.E.3d at 419. Though Dockery's right-to-appellate-counsel claim existed and was plainly known to him in 2010, he did not raise it in his amended first petition and he thus missed his opportunity for collateral review of the claim. *See Harris*, 2013 WL 1290790, at *4. His second petition that raises the claim for the first time therefore "shall be dismissed." 28 U.S.C. § 2244(b)(1).

The Court adopts Magistrate Judge Fox's conclusion as to the second-or-successive-petition ground, but it does not decide the other alternative bases for denial identified in the report.

### III. Conclusion

For the reasons discussed above, the Court concludes on two independent grounds that it does not have subject matter jurisdiction to consider the merits of the petition. The Court therefore adopts Magistrate Judge Fox's recommendation and denies Dockery's Petition for Writ of Habeas Corpus.

Though this Court denies Dockery's petition, the Court finds that Dockery makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Court therefore GRANTS Dockery's request for a certificate of appealability as to all claims raised in his habeas petition. Objection at 25. The Court further finds that an appeal of this order would

be in good faith and therefore GRANTS Dockery *in forma pauperis* status on appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: August 18, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge